IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-CV-642

| | |
|---|---|
| WASTE CONNECTIONS OF NORTH CAROLINA, INC., ) ) ) Plaintiff, ) ) v. ) ) K.R. DRENTH TRUCKING, INC., D/B/A ) KRD TRUCKING, ) ) Defendant. ) ) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Determination Regarding the Waiver of Privilege for Documents Produced by Plaintiff Waste Connections of North Carolina, Inc. (Doc. No. 12). The Motion arises out of a dispute over several emails produced by Plaintiff during discovery in this case. For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Plaintiff filed the instant action against Defendant on October 14, 2014, in Mecklenburg Superior Court. (Doc. No. 1-1). Defendant subsequently removed to this Court on November 20, 2014. (Doc. No. 1). On January 28, 2015, the Court ordered the parties to complete written discovery and take one deposition per party. (Doc. No. 9). The parties served written discovery requests on one another on February 3, 2015. (Doc. No. 16 at 3). Plaintiff and Defendant simultaneously exchanged discovery responses and documents on March 10, 2015. (*Id.* at 5).

Plaintiff produced over 11,000 pages of emails and documents. (*Id.* at 6). Among the produced materials are a disputed number of emails between Plaintiff's Division Vice President Tim Fadul and two of Plaintiff's in-house counsel, Aaron Rubin and Robert Cloninger. (Doc. No.

14 at 3–4). Defendant claims Plaintiff produced thirty-seven emails between Fadul and either Rubin or Cloninger totaling 269 pages of documents, (*id.* at 4), while Plaintiff claims it produced "four privileged email chains" totaling twenty unique pages of documents. (Doc. No. 16 at 7, n.8). Fadul was the Plaintiff's representative who negotiated the contract at issue between the parties in 2009. (Doc. No. 14 at 4). One of the disclosed emails, sent by Fadul to Rubin, contains a statement indicating Fadul's interpretation of one relevant provision of the contract at issue in this case. (*Id.*)

Defendant's counsel deposed Fadul on April 8, 2015. (*Id.* at 12). He presented Fadul with a copy of the email to Rubin regarding Fadul's interpretation of the relevant provision of the contract, and asked eighteen questions about the email without objection from Plaintiff's counsel. (*See* Doc. No. 14-39). The parties took a forty-nine minute lunch break shortly thereafter, and upon resuming the deposition, Plaintiff's counsel objected to the use of the email "based on the Consent Protective Order." (Doc. No. 14-40).[1] Plaintiff's counsel informed Defendant's counsel that he believed Plaintiff "mistakenly and inadvertently produced some documents" subject to attorney-client privilege and that his staff was in the process of determining whether or not other emails were inadvertently disclosed. (*Id.* at 1). Plaintiff's counsel stated he would place on the record "by the end of the day" if there were any other documents he needed to object to. (*Id*. at 2).

Defendant subsequently filed the instant Motion on April 28, 2015. (Doc. No. 12). On May 1, 2015, Plaintiff's counsel provided Defendant with the bates-label numbers for the documents allegedly inadvertently produced and protected by attorney-client privilege and/or work product doctrine. (Doc. No. 40-41).

---

[1] This Court did not enter the Consent Protective Order until May 7, 2015. (Doc. No. 15). It was not submitted by the parties for entry until May 4, 2014. (Doc. No. 16 at 4, n.4). However, at the outset of the deposition on April 8, 2015, the parties explicitly agreed that the terms of the Consent Protective Order "governed the deposition and the conduct of the parties." (*Id.*) Thus it is binding on the conduct of the parties. *See* Federal Rule of Evidence 502(e).

## II. LEGAL STANDARD

When considering an issue related to attorney-client privilege, "[a] proper analysis . . . must begin with a determination of the applicable law." *Hawkins v. Stables*, 148 F.3d 379, 382 (4th Cir. 1998). Federal Rule of Evidence 501 addresses the issue:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501. Under North Carolina law, attorney-client privilege protects a communication between a client and his attorney

> if "(1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose, although litigation need not be contemplated, and (5) the client has not waived the privilege."

*State v. McIntosh*, 336 N.C. 517, 523–24, (1994) (quoting *State v. Murvin*, 304 N.C. 523, 531 (1981)); *see also Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 32, (2001). "Although an attorney may assert the privilege when necessary to protect the interests of the client, the privilege belongs solely to the client." *In re Miller*, 357 N.C. 316, 337 (2003).

Federal Rule of Evidence 502(b) dictates that disclosure of information protected by attorney-client privilege or work-product privilege during a federal proceeding does not operate as a waiver if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b). Federal Rule of Evidence 502(d) establishes that a federal court

may order that privilege or protection is not waived by disclosure "connected with the litigation pending before the court." Fed. R. Evid. 502(d). Finally, Federal Rule of Evidence 502(f) notes that the rule "applies even if state law provides the rule of decision." Fed. R. Evid. 502(f).

Courts within the Fourth Circuit have held that to the extent court orders regarding accidental disclosure of privileged documents are silent as to the three prongs of Federal Rule of Evidence 502(b), the court will default to 502(b) to fill in the gaps of the controlling agreement. *See U.S. Home Corp. v. Settlers Crossing, LLC*, 2012 WL 3025111, at *5 (D. Md. July 23, 2012). Specifically, "if a court order or agreement does not provide adequate detail regarding what constitutes inadvertence, what precautionary measures are required, and what the producing party's post-production responsibilities are to escape waiver," then the court will look to 502(b). *Id.*

### III. DISCUSSION

#### A. Determination of Privilege

Because the rule of decision applied to the underlying case is state law, the Court finds that North Carolina law governs the determination of whether material is privileged. *See* Fed. R. Evid. 501. Based on the Plaintiff's description of the emails between Fadul and Plaintiff's in-house counsel, the Court finds that the emails are protected by attorney-client privilege. *See McIntosh*, 336 N.C. at 523–24.

#### B. Inadvertent Disclosure

Disclosure operates as a waiver of privilege unless Federal Rule of Evidence 502 applies. Plaintiff made two disclosures that must be considered separately by the court. The first is the production of the privileged emails during discovery, and the second is Fadul's testimony regarding the single email during deposition. Plaintiff contends both disclosures were inadvertent and are therefore governed by the terms of the Consent Protective Order.

The Consent Protective Order reads as follows:

> Any party that mistakenly produces materials protected by the attorney/client privilege, work product doctrine or other privilege, doctrine or right may obtain the return of those materials by promptly notifying the recipient(s) of the produced documents. The recipient shall then immediately cease all use of the privileged material and gather and return all copies of the privileged material to the producing party. Any inadvertent production of such privileged documents shall not be deemed a waiver in whole or in part of that party's claim of privilege, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter.

(Doc. No. 15 at 4, ¶ 12). The Consent Protective Order equates inadvertent production with mistaken production. (Doc. No. 15 at 4, ¶ 12). It also requires the producing party to "promptly" notify the receiving party when it learns it mistakenly disclosed privileged documents. (*Id.*) However, the Order is silent as to precautionary measures that parties must take in order to avoid mistakenly producing privileged documents. (*See id.*) As a result, 502(b) controls with regards to determining whether Plaintiff took adequate precautions to prevent mistaken disclosure. *See U.S. Home Corp.*, 2012 WL 3025111, at *5.

### 1. Production of emails during discovery

The Court has reviewed the parties' arguments on this issue. For the reasons stated in Plaintiff's response, it finds that the disclosure was inadvertent because it arose out of a mistake, Plaintiff took adequate precautions to prevent inadvertent disclosure, and Plaintiff promptly notified Defendant of the disclosure of the emails after gaining knowledge of its accidental disclosure. As a result, the Court finds that Plaintiff did not waive the privilege as to the e-mails between Fadul and Plaintiff's in-house counsel with respect to this disclosure.

### 2. Testimony regarding the Fadul email

Defendant argues that the disclosures made during Fadul's deposition do not meet the criteria for an inadvertent disclosure under the Consent Protective Order or Federal Rule of Evidence 502(b). (Doc. No. 17 at 5–6). According to Plaintiff's counsel's affidavit, when

Defendant's counsel presented Fadul with a copy of the email, Plaintiff's counsel "immediately saw that [the email] appeared on its face to be privileged." (Doc. No. 16-4 at 3, ¶ 26). Plaintiff's counsel failed to object because "he was confused about why Defendant possessed it" and "felt secure in the knowledge that the Consent Protective Order and FRE 502 provided protections in the event of an inadvertent disclosure." (*Id.*).

Plaintiff argues that objection to privileged materials during depositions does not need to be "immediate." However, it cites no cases to support its argument that objecting after allowing eighteen questions about the privileged material constitutes a "prompt" objection.[2] The Court is sympathetic with counsel, but does not believe he should be afforded greater protection than an attorney at trial who does not object to evidence at the critical point when tendered.[3] Thus the Court finds that Plaintiff's disclosure operates as a waiver of privilege with respect to the email presented to Fadul at the deposition because Plaintiff failed to promptly notify Defendant when it realized it had inadvertently produced a privileged document, rendering the disclosure outside the bounds of the Consent Protective Order and Federal Rule of Evidence 502(b).

The Court does, however, wish to note the limited nature of its finding. The Court finds only that because of the questions asked and answered in the deposition, privilege has been waived with respect to the single email. This finding does not speak to the protection otherwise afforded to inadvertently disclosed, protected material. For these reasons, and having reviewed the

---

[2] Plaintiff cites *King Pharmaceuticals v. Purdue Pharma* as support for this argument. 2010 WL 2243872 (W.D. Va. 2010). However, that case is distinguishable from this case on its facts. There is no indication that the party in *King Pharmaceuticals* answered questions regarding the inadvertently disclosed document before objecting.

[3] While this issue is governed by the parties' consent order and FRE 502, the Court finds instructive the Supreme Court of North Carolina's reasoning in *State v. Tate*, where the court held that a client may waive privilege regarding a confidential communication between his attorney and himself "when he offers testimony concerning the substance of the communication." 294 N.C. 189, 193 (1978). It also takes note of *Hulse v. Arrow Trucking Co.*, where the North Carolina Court of Appeals held that testimony regarding a written communication during deposition waived attorney-client privilege and rendered said written communication discoverable. 161 N.C. App. 306, 310 (2003).

arguments of the parties, the Court finds that Plaintiff did not waive privilege as to the other documents referenced in the motion by this disclosure.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Determination Regarding the Waiver of Privilege (Doc. No. 12) is **GRANTED** in part and **DENIED** in part. The Court finds that Plaintiff waived the attorney-client privilege regarding the email presented to Plaintiff's representative during deposition, and finds that it did not waive the privilege as to the other documents referenced in the Motion.

**SO ORDERED.**

Signed: August 4, 2015

Graham C. Mullen
United States District Judge